**\*\*FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

————————————————————————  :
                                            :
STEPHEN SIMONI,                             :         Civil Action No: 3:11- cv-7528
                           Plaintiff,       :
                                            :
          v.                                :                  **OPINION**
                                            :
KATIE LUCIANI, Individually and as          :
Site Manager of JSUMC, MERIDIAN             :
HEALTH SYSTEMS, INC., MERIDIAN              :
HEALTH, INC., MERIDIAN HOSPITALS            :
CORP., MERIDIAN HEALTH, and                 :
JERSEY SHORE UNIVERSITY                     :
MEDICAL CENTER,                             :
                           Defendants.      :
————————————————————————  :

**WOLFSON, United States District Judge**:

This lawsuit involves a terminated employee suing his former employer over alleged

violations of the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA").  In this

Opinion, the Court determines whether to grant Defendants' Meridian Health Systems, Inc.,

Meridian Health, Inc., Meridian Hospitals Corp., Meridian Health, Jersey Shore University

Medical Center (collectively, "Hospital Defendants") and Katie Luciani's (all defendants,

collectively, "Defendants") motion to dismiss Plaintiff Stephen Simoni's ("Plaintiff's" or

"Simoni's") Complaint.  Defendants argue that the doctrine of *res judicata* mandates dismissal of

the present complaint.  For the reasons stated below, the Court denies Defendants' motion to

dismiss.

## I.     BACKGROUND

Defendants' motion to dismiss focuses solely on the *res judicata* defense, which relates to

the previous litigation between the parties that was instituted on December 28, 2010.  As such,

the following allegations are taken from the opinion in the prior suit, *Roe v. Diamond*, Civ. A. 10-6798 JAP, 2011 WL 4736353 (D.N.J. Oct. 6, 2011) ("*Simoni I*"), before the Hon. Joel A. Pisano, and the presently contested complaint.  I begin by detailing the allegations and rulings in the prior suit and then address the allegations in this case.

### A.        The Prior Civil Suit

The allegations in the complaint in the prior litigation, *Simoni I*, are set forth concisely in Judge Pisano's Opinion, hence I quote the allegations from that opinion:

> This action arises out of Plaintiff's employment with Jersey Shore University Medical Center ("JSUMC"), a member of the Meridian Health System. Plaintiff commenced his employment at JSUMC in August 2010. Although initially hired as a per diem Registered Nurse in JSUMC's Medical Intensive Care Unit, Plaintiff ultimately accepted a position in JSUMC's Cardiac Catheterization Laboratory ("Cath Lab"). After attending a mandatory Orientation program for new nurses on August 10, 2010—at which Plaintiff received a copy of the Collective Bargaining Agreement ("CBA") between the Union [the employee's union at JSUMC] and JSUMC, the pertinent provisions of which are discussed in detail below— Plaintiff began working in the Cath Lab.
>
> Plaintiff was initially assigned to work under Defendant Distanislao as part of a Preceptor Program at JSUMC designed to orient and assess new nurses. Throughout the course of the assignment, Plaintiff requested that a different preceptor be assigned and complained that Distanislao was neither properly orienting him nor complying with Meridian's Code of Conduct. Distanislao was similarly critical of Plaintiff and reported to Defendants Diamond and Cusson that Plaintiff "was not getting the big picture." Am. Compl. ¶ 15.
>
> Plaintiff was subsequently assigned Defendant Lovey as his next preceptor. Plaintiff maintains that his relationship with Lovey was positive for the duration of the preceptor period, up until the final twenty-four hours. At that point, Plaintiff alleges that Lovey's attitude changed, and Plaintiff was required to perform tasks that he had not previously been asked to perform. That same day, Plaintiff was also informed of purported deficiencies in his work that Lovey had provided to Defendant Cusson. Specifically, he was cited for failing to perform "time-outs" and for causing distraction

by moving about the Cath Lab during procedures. He was further instructed that, unless his work improved, he would be terminated at the end of the probationary period.

Plaintiff was indeed terminated by JSUMC on October 18, 2010. Following his termination, Plaintiff contacted the Union to pursue a grievance. Frederick DeLuca, a Union representative, filed a grievance on Plaintiff's behalf, but the grievance was denied by JSUMC. DeLuca then informed Plaintiff that he would not be taking Plaintiff's grievance to arbitration because Plaintiff was terminated during his probationary period, and "past pattern and practice and the way the Union and Corporate Defendants read' the CBA" led them to conclude that the CBA's procedural and substantive protections do not apply to probationary employees. Id. ¶ 113. Dissatisfied with that response, Plaintiff filed the instant action on December 28, 2010. After separate motions to dismiss were filed by the Hospital and Individual Defendants and the Union Defendants, Plaintiff filed an Amended Complaint on April 18, 2011.

*Id.* at *1-2 (footnote omitted).

Plaintiff's complaint in *Simoni I* asserted seven claims: (1) that the Union and the Hospital Defendants violated Section 301 of the Labor Management Relations Act ("LMRA"), (2) the Hospital defendants violated Section 7 of the National Labor Relations Act ("NLRA"), (3) the Hospital defendants and other individuals violated the New Jersey Law Against Discrimination, (4) the Hospital Defendants and other individuals defamed Simoni, (5) the Hospital defendants breached the collective bargaining agreement ("CBA"), (6) the Hospital Defendants and other individuals violated the Conscientious Employee Protection Act ("CEPA") and (7) the Hospital Defendants and other individuals tortuously interfered with his prospective economic advantage.

The defendants in that action moved to dismiss the complaint in its entirety, and on October 6, 2011, Judge Pisano ruled on the motions.  In the opinion, the Judge categorized the Plaintiff's claims into three groups.

The first group was the § 301 LMRA claims against the Union and the Hospital Defendants.  In connection with these claims, Plaintiff alleged that "the Union breached its duty of fair representation by only 'perfunctorily' filing a grievance on [his] behalf [and] that the Union's failure to pursue arbitration after [he] was terminated at the conclusion of his probationary period was arbitrary and irrational in light of the 'explicit contractual language' in the CBA requiring 'just cause' removal for 'any employee." *Id.* at *7.  Additionally, Plaintiff alleged that the Union acted in bad faith, asserting that "the Union's actions were motivated by its desire to avoid the potential windfall of liability that would result if it admitted that it had repeatedly violated its duty to probationary employees in the past by failing to enforce the CBA's 'just cause' provisions." *Id.* at *9.  The Judge dismissed the LMRA claim against the Union, holding that the plaintiff "fail[ed] to state a claim that the Union breached its duty of fair representation." *Id.* at *6. Because of this failure, the § 301 LMRA claim against the Hospital Defendants, which was predicated on the claim against the Union, was also dismissed.  *Id.*

The second category included Plaintiff's claims against the Hospital Defendants under Section 7 of the National Labor Relations Act.  Plaintiff's unfair labor practice allegations were that the Hospital Defendants violated the NLRA "by terminating Plaintiff because of his complaints regarding Defendant Clark Distanislao and the preceptor program at large." *Id.* at 11. The Judge recognized that the Court could exercise jurisdiction over unfair labor practice charges if properly brought under § 301 of the LMRA.  *Id.*  However, the Judge further reasoned

> to the extent that the Plaintiff's second cause of action rests on the Hospital Defendants' alleged breach of the CBA or the Union's alleged breach of its duty of fair representation.... the Court has considered those claims and dismissed them above. Furthermore, to the extent that Plaintiff's claim is brought directly under § 7 and alleges that the Hospital Defendants engaged in an unfair labor practice as defined in the NLRA, ... [preemption] applies.

4

*Id.* at \*8.  In other words, the NLRA claim was dismissed on the merits to the extent it rested on the unfair representation allegations.  To the extent that the section 7 claim did not rest on the unfair representation allegations, it was preempted.

The Judge declined to exercise supplemental jurisdiction over the third and final category of claims—the state law causes of action under the NJLAD and CEPA, and for breach of contract and tortuous interference.  *Id*.  Hence the Judge did not reach the merits of those claims. With each count of the Plaintiff's Complaint dismissed, the entire suit was dismissed and the case closed.  Shortly thereafter, Plaintiff appealed to the Third Circuit.  The appeal is still pending as of the date of this Opinion.

**B.    The Instant Suit**

Several months after the suit was dismissed, Plaintiff filed the instant suit on, or about, December 28, 2011, against JSUMC, Katie Luciani, JSUMC's site manager, Meridian Health Systems,    Inc.,    Meridian    Health,    Inc.,    Meridian    Hospitals    Corp., and Meridian Health.    In the initial complaint[1], Plaintiff alleged that JSUMC "wrongfully terminated Roe and then adamantly refused to send Roe the notifications required by the Consolidated Omnibus Budget Reconciliation Act ('COBRA') …."  Compl., ¶1.  Through the complaint, Plaintiff sought damages "upwards of $250,000 in medical, dental, pharmacy, and vision costs" that resulted from a lack of insurance coverage.  *Id.* at ¶2.  The complaint asserted a single Employee Retirement Income Security Program, 29 U.S.C. § 1001 *et seq.* ("ERISA") cause of action:  violation of COBRA, 29 U.S.C. §1332(c).  It asserts that the COBRA notices were due on December 1, 2010, but were never provided to Plaintiff.  *Id.* at ¶ 15.

---

[1]  Plaintiff filed the initial complaint in this matter under the pseudonym Terry Roe. The Magistrate Judge assigned to this matter entered an order directing Plaintiff to refile the complaint under his true name, Stephen Simoni.  *See* Order dated Feb. 22, 2012 (Docket Entry No. 19).

Defendants then jointly filed the instant motion to dismiss, arguing that Plaintiff's COBRA claim is precluded by the prior suit. Defendants' moving papers address Plaintiff's initial complaint, which was filed under the pseudonym Terry Roe. Not long after Defendants' motion was filed, on February 22, 2012, the Magistrate Judge ordered Plaintiff to file an amended complaint that utilized Plaintiff's true name or else risk dismissal.

Plaintiff complied with that order, and filed an amended complaint on March 5, 2012. In addition to utilizing his true name, Plaintiff made additional revisions in the amended complaint. The operative difference between the initial complaint and the amended complaint is that the latter removes allegations referring to Plaintiff's termination from JSUMC as wrongful. Like the initial complaint, however, the amended complaint asserts the COBRA claim as its only count. It, further, states that the COBRA notices were due on December 2, 2010, rather than December 1, 2010. *See* Am. Compl. ¶ 14.

## II.   STANDARD OF REVIEW

When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal citations and quotations omitted). In *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561 (quoting *Conley,* 355 U.S. at 45–46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief

above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 556).

Where a defense of claim preclusion is raised on a motion to dismiss, "the court can take notice of all facts necessary for the decision." *Toscano v. Connecticut General Life Ins. Co.*, 288 Fed.Appx. 36 (3d Cir. 2008).  This means "a court may take judicial notice of the record from a previous court proceeding between the parties." *Id.  See generally Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993)).  "The party seeking to take advantage of claim preclusion has the burden of establishing it." *Id.* (quoting *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 158 (3d Cir. 2001)).

## III.   DISCUSSION

The parties' papers use the term *res judicata* to describe the applicable legal construct at issue in this case.  However, as *res judicata* can refer to either issue and claim preclusion, or both, *see Russo v. City of Philadelphia*, 459 Fed.Appx. 176, 178 (3d Cir. 2012), and the Third Circuit has suggested that a district court should make clear its use the term, *see id.*, I find it useful to specifically define my use of the term *res judicata*.  I define it, in part, by distinguishing the claim preclusion species of *res judicata* from collateral estoppel and from New Jersey's entire controversy doctrine.  In clarifying the demarcations between these various doctrines for purposes of this Opinion, the Court is aware that the case law in this area can appear to gloss

over pertinent distinctions between the doctrines by utilizing certain terms interchangeably. Indeed, commentators have noted the murkiness of both state and federal preclusion law, *see* Wright, et al., 18A Fed. Prac. & Proc. Juris. § 4402 (2d ed.), and the imprecise use of the related preclusion doctrines.  I do not intend to sort out that jurisprudential thicket here; my aim is to simply make clear my use of the terminology in this Opinion.

### A.     Preclusion Concepts

As I noted in my recent decision in Great Western Min. & Mineral Co. v. ADR Options, Inc., --- F.Supp.2d ----, 2012 WL 406327 (D.N.J. 2012), "[r]es judicata encompasses two preclusion concepts—issue preclusion, which forecloses litigation of a litigated and decided matter often referred to as direct or collateral estoppel, and claim preclusion, which disallows litigation of a matter that has never been litigated but which should have been presented in an earlier suit."  Bierley v. Dombrowski, 309 Fed.Appx. 594, 596–7 (3d Cir. 2009).

The distinction between claim and issue preclusion has been aptly and succinctly explained as follows:

> The rules of res judicata, as the term is sometimes sweepingly used, actually comprise two doctrines concerning the preclusive effect of a prior adjudication. The first such doctrine is "claim preclusion," or true res judicata. It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." … When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar." … Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. … The aim of claim preclusion is thus to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach.

> The second doctrine, collateral estoppel or "issue preclusion," recognizes that suits addressed to particular claims may present issues relevant to suits on other claims. In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties. … It is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication between the parties; the contested issue must have been litigated and necessary to the judgment earlier rendered.

Wright, et al., 18A Fed. Prac. & Proc. Juris. § 4402 (2d ed.).

In other words, *res judicata*, or claim preclusion, is a broader doctrine than collateral estoppel. It applies not only to claims brought in a previous lawsuit, but also to claims that could have been brought in that suit. *Duhaney v. Attorney General of U.S.*, 621 F.3d 340 (3d Cir. 2010). Preclusion of this sort bars a party from initiating a second suit against the same adverse party based on the same cause of action as the first suit. The doctrine attaches where there has been: (1) a final judgment on the merits in a previous lawsuit involving: (2) the same parties or their privies; and (3) a subsequent action based on the same cause of action. *Mullarkey v. Tamboer*, 536 F.3d 215, 225 (3d Cir. 2008) (citations omitted). "The doctrine of claim preclusion is central to the purpose for which civil courts have been established, the conclusive resolution of disputes, and seeks to avoid the expense and vexation of multiple lawsuits, while conserving judicial resources and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions." *Gage v. Warren Tp. Committee & Planning Bd. Members*, 463 Fed.Appx. 68, 72 (3d Cir. 2012).

In contrast, collateral estoppel, or issue preclusion, prevents parties or their privies only from re-litigating an issue already litigated in a valid, final judgment on the merits. *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). The doctrine applies if four requirements are met: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2)

that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Id.*

Lastly, as Plaintiff correctly suggests, New Jersey's entire controversy doctrine has no applicability here. The entire controversy doctrine is New Jersey's own, distinctive application of *res judicata* principles. It "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Kozyra v. Allen,* 973 F.2d 1110, 1111 (3d Cir. 1992) (citations omitted). *See also Mullarkey*, 536 F.3d at 229 ("Under the entire controversy doctrine, a party cannot withhold part of a controversy for later …."). While the entire controversy doctrine is applied by federal courts interpreting a prior state court decision, *see San Remo Hotel L.P. v. County of San Francisco,* 545 U.S. 323, 336 (2005) *cited in Rouse v. II-VI Inc.*, No. 08-3992, 2009 WL 1337144, *5 (3d Cir. 2009), it does not apply to a federal court's interpretation of a prior federal decision. Federal preclusion law governs that question. *Taylor v. Sturgell*, 128 S.Ct. 2161, 2171 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.")

Here, Defendants' motion is best understood as relying on the doctrine of claim preclusion because Plaintiff's COBRA claim was not raised or adjudicated in *Simoni I*. *See Peloro*, 488 f.3d at 174 (explaining that issue preclusion "prevents parties from relitigating an issue that has already been actually litigated.") Indeed, Defendants' primary argument in support of its motion is that Plaintiff's COBRA claim should be dismissed because Plaintiff could have brought that claim in *Simoni I*. See Def. Mov. Br. at 8. Having determined that claim preclusion

serves as the basis for Defendants' motion, I now address whether the doctrine bars Plaintiff's claim here.

### B.      Claim Preclusion

At the outset, I clarify which of Plaintiff's complaints in this action I construe for claim preclusion purposes.  Defendants' moving papers address the initial complaint filed in this matter, yet Plaintiff filed an amended complaint, on March 5, 2012, that removed certain language which Defendants argue demonstrates the overlap between this suit and *Simoni I*.  My analysis will focus on the initial complaint because it was the operative complaint at the time Defendants filed their motion.  Had Plaintiff filed the amended complaint as of right within 21 days of Defendants' pre-answer motion, in accordance with Federal Rule of Civil Procedure 15(a)(1)(B), I would have likely treated the amended complaint as the operative complaint for purposes of my analysis.  However, since the amended complaint was filed more than 21 days after Defendants' moving papers were filed, I analyze the initial complaint instead.

As noted, claim preclusion attaches where there has been: (1) a final judgment on the merits in a previous lawsuit involving: (2) the same parties or their privies; and (3) a subsequent action based on the same cause of action.  *Mullarkey*, 536 F.3d at 225.  This test is not to be applied "mechanically," but courts should "focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit." *Id. Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 259 (3d Cir. 2010) (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). Requiring plaintiffs to present all claims arising out of the same occurrence in a single suit avoids "piecemeal litigation and conserve[s] judicial resources." *Id.*  Here, Plaintiff concedes that the defendants in *Simoni I* and this action

are in privity, but the parties dispute whether *Simoni I* was a final judgment on the merits and whether both suits are based on the same cause of action.

### 1.    Final Judgment

Dismissal for failure to state a claim serves as a final judgment on the merits. *See Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007) *overruled on other grounds by Estate of Kevin Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009).  Conversely, a dismissal for jurisdictional purposes does not serve as a final judgment on the merits. *See Costello v. United States*, 365 U.S. 265, 285 (1961) ("If the first suit was dismissed for .... a want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit."); *Shih-Liang Chen v. Township of Fairfield*, 354 Fed.Appx. 656, 659 (3d Cir. 2009) (noting that dismissals based on "lack of jurisdiction, improper venue or failure to join a party" are not adjudications on the merits) (citing Fed. R. Civ. P. 41(b)).

In *Simoni I*, Judge Pisano dismissed the § 301 LMRA claims, premised on Plaintiff's allegations that the Union breached its duty of fair representation to Plaintiff by refusing to pursue arbitration of his employment termination, for failure to state a claim.  Thus, these unfair representation claims were dismissed on their merits as part of a final judgment.  That aspect of Plaintiff's § 7 NLRA claim based on the Union's alleged breach of its duty of fair representation was likewise dismissed on the merits.  However, that aspect of the NLRA claim that was based on the Hospital Defendants unfair labor practices was dismissed on preemption grounds.  Unlike the unfair representation-related claims, that jurisdictional ruling did not constitute a ruling on the merits and is not final for *res judicata* purposes.  Furthermore, as Judge Pisano declined to exercise supplemental jurisdiction over the state law claims, no final judgment was rendered on

those claims either.  Indeed, those claims could have been refiled in state court following the judge's decision not to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367 (d).  So, in sum, only the unfair representation-related claims were adjudicated on the merits, and the remainder of my claim preclusion analysis is limited to those claims.

### 2.      Same Cause of Action

That these *Simoni I* claims were decided on the merits does not compel application of claim preclusion here, however, because the two suits are not based on the same cause of action. When determining whether two suits are based on the same cause of action, the Third Circuit takes a "broad" approach and directs district courts to look at the "essential similarity of the underlying events giving rise to the various legal claims."  *Sheridan*, 609 F.3d at 259 (quoting *Athlone*, 746 F.2d at 983); *Churchill*, 183 F.3d at 194.  The essential similarity test is guided by the *Althone* factors, set forth in the Third Circuit's decision in *United States v. Athlone Indus., Inc.*, *supra*,:

> (1)  whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions);
>
> (2)  whether the theory of recovery is the same;
>
> (3)  whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and
>
> (4)  whether the material facts alleged are the same.

*Id* at 261 (quoting *Athlone*, 609 F.3d at 261).

As to the first factor, review of the two complaints clearly demonstrates that each complaint asserts distinct wrongs.  In the original suit, Plaintiff's unfair representation allegations centered on the Union's refusal to pursue arbitration of his termination, arguing that this refusal

13

was made in bad faith and that it violated the parties' collective bargaining agreement.   In contrast, in the instant action, Simoni alleges that the Hospital Defendants and Luciani failed to mail him a COBRA notice in a timely manner.[2]   His COBRA claim does not rely on or invoke the collective bargaining agreement in any fashion, nor does it relate to the Union's and Hospital Defendants' decision not to pursue arbitration.   *Compare Reinbold v. U.S. Post Office*, 250 Fed.Appx. 465 (3d Cir. 2007) (holding that duty of fair representation and unfair labor practices claims brought by postal employee were precluded in light of prior suit asserting that union "did not act in good faith in representing [the plaintiff] pursuant to a collective bargaining agreement") (internal quotation mark omitted).

---

[2]      The operative COBRA provision, 29 U.S.C. § 1132(c), provides:

> (1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C. §1132(c).

Defendants argue that Plaintiff sought similar relief in both actions because, in *Simoni I*, he sought damages for "lost tax-free health, life, disability, pharmacy, vision, and critical care insurance policies and benefits, . . . [and] tax-free health care expense reimbursement benefits." *Simoni I* Am. Compl., ¶141.   These allegations, however, appear to refer to pre-termination employer provided health plans.   When an employee pays toward his health insurance premium, the employee is typically permitted to pay with pre-tax funds.   *See In re Walker*, 406 B.R. 840, 854 n.22 (Bkrtcy.D.Minn. 2009); *Lott v. Metropolitan Life Ins. Co.*, 849 F.Supp. 1451, 1453 (M.D.Ala. 1993) (describing an employer's flexible benefits plan).   When, on the other hand, a terminated employee elects COBRA health insurance coverage, that employee typically pays the full premium with his own post-tax funds.   *See Shafer v. United General Title Ins. Co.,* Civ. No. 08-2884 (DRD), 2009 WL 2058524, *8 (D.N.J. Jul. 08, 2009).   Accordingly, I read Plaintiff's request for relief in *Simoni I* as seeking only those benefits he was entitled to receive as an employee.   The *Simoni I* Complaint does not refer to benefits that became available only upon his separation from JSUMC; thus, I am not persuaded that the above-quoted language demonstrates that Plaintiff sought similar relief in both actions.

Moreover, the Second Circuit held in a factually analogous case that a former employee's mere reference to pension benefits as a potential form of recovery in a prior breach of oral agreement suit against his employer did not preclude a subsequent action by the employee alleging that he was wrongfully denied pension benefits under a written contract between the parties.   *See Herendeen v. Champion Intern. Corp.*, 525 F.2d 130 (2d Cir. 1975).   That court reasoned that "[w]hile the same alleged right, the right to receive pension benefits, is involved in both suits, the wrongful acts of defendants alleged in the two complaints are quite different." *Id.* at 134.   Likewise, here, Plaintiff's two suits allege different wrongful acts; this is not a case

where the Plaintiff's first suit also alleged that he was wrongfully denied access to benefits available only to separated employees. *Compare Toscano v. Connecticut General Life Ins. Co.*, No. 05-4833 (GEB), 2007 WL 542285 (D.N.J. Feb. 16, 2007) (finding claim preclusion where both first and second suit sought the payment of long-term disability income following an employee's departure from his employer) *aff'd* 228 Fed.Appx. 36 (3d Cir. 2008).

The remaining *Athlone* factors lend further support to my conclusion that the two suits do not assert the same causes of action. As for the second factor, it goes without saying that the theories of recovery for the two actions differ: *Simoni I* challenged the Union's representation of Plaintiff in connection with his termination under labor law theories whereas the instant action asserts a post-termination, COBRA theory. Regarding the third factor—whether the evidence for both actions in the same—there is little, if any, overlap of the evidence relevant to each suit. To succeed in this action, Plaintiff must demonstrate the Defendants' failure to provide a timely COBRA notice. *Emilien v. Stull Tech. Corp.*, 70 Fed.Appx. 635, 645 (3d Cir. 2003). In contrast, *Simoni I* called for an investigation of the Union's internal grievance procedure and an interpretation of the CBA. While certain members of the Hospital Defendants' Human Resources Department that could be deposed or otherwise called upon here may have also been deposed or otherwise called upon in the previous litigation, they would be attesting to a different set of facts. Here they will likely be asked about the events surrounding the COBRA notice whereas in the previous suit they would have been asked to supply information regarding the events surrounding Simoni's termination.

In terms of the fourth *Athlone* factor, the material facts underlying both suits differ greatly. The inquiry is focused on whether the "thrust of the two complaints remain[] practically identical." *Churchill v. Star Enterprises*, 183 F.3d 184, 195 (3d Cir. 1999). In the instant action,

Simoni's key allegation is that the Hospital Defendants failed to mail him COBRA forms so that he could elect post-termination health coverage whereas the prior action asserted facts relevant to the Union's alleged failure to fairly represent Plaintiff as he challenged his termination.  Thus, the material facts of both suits are not "practically identical" but are, in fact, quite distinct, and "[i]t is only where both cases actually result from the same transaction and involve the same issues of fact that claim preclusion applies."  *Tucker v. Merck & Co., Inc.*, No. 03–5015, 2004 WL 350467 (E.D.Pa. Feb. 18, 2004) (citing *Churchill*, 183 F.3d at 187).

Defendants disagree with this sort of application of the *Athlone* factors, arguing that Plaintiff's COBRA claim arises out of the same series of events related to Plaintiff's termination that were asserted in *Simoni I*.  Indeed, the Tenth Circuit adopted such a rationale in an employment case.  The female plaintiff in *Wilkes v. Wyoming Dept. of Employment Div. of Labor Standards*, 314 F.3d 501 (10th Cir. 2002), had filed an Equal Pay Act suit against her employer, alleging that her employer paid her less than it paid her male counterparts.  *Id.* at 503. In that same suit, the plaintiff further alleged retaliation in violation of her free speech rights. She, then, filed a gender discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against her employer, in which she alleged that she was constructively discharged and retaliated against based on her gender.  *Id.* at 505.  In ruling that this latter suit was barred by claim preclusion, the Tenth Circuit held that the discrimination claim arose of the same employment relationship and, therefore, should have been brought in the initial Equal Pay Act suit.  *Id.*  According to the Tenth Circuit: "we are not free to transactionally distinguish wrongful termination claims from those claims arising out of the employment but before and unrelated to the discharge."  *Id.* (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1228 (10th Cir. 1999)).

In a more factually analogous case cited by Plaintiff, however, the Seventh Circuit employed a different rationale that I find more persuasive and applicable here.  The plaintiff in *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223 (7th Cir. 1993), had filed a COBRA suit against her employer seeking health coverage after she had been terminated.  *Id.* at 224. Once that suit had been adjudicated, she filed a second action challenging her termination under Title VII.

Ruling that claim preclusion did not apply, the Seventh Circuit reasoned that, while both claims arose out of her discharge in a but-for sense, a but-for test "is obviously no good …."  *Id.* at 226.

> For suppose the plaintiff on her way out of her office after being fired had slipped on a banana peel carelessly dropped by another employee and it was clear that had she not been fired she would not have slipped because the banana peel would have been picked up by the time she left at the end of a normal work day. No one would argue in such a case that her claim for negligence was part of the same transaction as her claim for discrimination merely because both were causally connected in the loose and misleading but-for sense to the termination. As the two claims would have no material facts in common there would be no reason to force them to be brought in the same suit. There is no more reason here.

*Id.*  Moreover, the circuit further reasoned, " [t]he COBRA suit concerns facts that arose *after* the plaintiff was fired and that therefore have no connection to the facts concerning racial and gender discrimination on which her Title VII claim is based, all of which occurred before (though some perhaps just before) she was fired."  *Id.* (emphasis in original).

Similarly, here, Plaintiff's COBRA claim is based a different set of factual circumstances than those that underlied his duty of fair representation and unfair labor practices claims.  In my view, "[t]he fact that the parties have been continuously involved in an employment relationship is alone insufficient to demonstrate that two raised actions arise from the same . . . set of facts."

18

*Tucker*, 2004 WL 350467 at *5.  As another district court in this district has observed, in finding the Tenth Circuit's reasoning in *Wilkes* unpersuasive, "[a]n employment relationship between two parties may last for years or decades and may involve numerous incidents of varying distance in time and similarity. Such a relationship alone is not adequate to support the defendant's entire burden under the claim preclusion doctrine." *Id.*  I agree.

I, further, find *Herrmann*'s rationale consistent with recent Third Circuit claim preclusion case law.  In *Duhaney*, *supra*, for example, the circuit addressed whether a prior Board of Immigration Appeals removability proceeding brought by the United States precluded the United States from bringing a subsequent removability proceeding based on a different underlying crime.  The circuit held that claim preclusion did not bar the second proceeding because, "[a]lthough there are common elements of fact between the two removal proceedings, the critical acts and the necessary documentation were different for the two proceedings." *Id.* at 349.  Just as in *Duhaney*, the critical facts underlying Plaintiff's two suits are not one and the same.[3]  The nucleus of operative facts here relates solely to the mailing of the COBRA notice.

In arguing that the two suits involve the same underlying facts, Defendants make much of Plaintiff's allegations in his initial complaint in this suit that Defendants' failure to provide COBRA notices

---

[3]      In addition, the Third Circuit recently held in *Sheridan*, *supra*, that a plaintiff's re-pleading of similar facts in a separate action based on that plaintiff's exposure to beryllium emissions was barred by the doctrine claim preclusion.  *See* 609 F.3d at 261.  In the first suit, the plaintiff alleged that the beryllium emissions caused her to develop chronic beryllium disease while, in the second suit, she claimed that the emissions merely increased her risk of contracting that same disease.  Although the evidence supporting those two claims differed, the circuit nonetheless found the second suit precluded because "the underlying assertions giving rise to each claim were the same." *Id.*  Here, in contrast to the two sets of allegations at issue in *Sheridan*, the facts giving rise to Plaintiff's claims in the separate suits are totally dissimilar and rely on different proofs.

19

> is consistent with Defendants' fraudulent documentary and bad-faith procedural conduct through the past two years wherein Defendants . . . refused to provide the various procedural safeguards and related documentation that are required by Defendants' own policies and contracts including Meridian's Guaranteed Fair Treatment Procedure, labor arbitration, and Daily Coaching Forms.

Compl., ¶ 11.

I am not convinced that Plaintiff's inclusion of these sorts of allegations in the instant complaint demonstrates that the two causes of action are based on the same facts. It is apparent from reading the instant complaint in its entirety that these allegations merely provide context for Plaintiff's COBRA claim (and, perhaps, serve some sort of cathartic function for Plaintiff). But the allegations are not critical or material to the COBRA claim. For that claim, the employer, or administrator of the group insurance health care plan, must provide the notice to the employee within forty-four days of the qualifying event—here, Plaintiff's termination. *See* 29 C.F.R. § 2590–606.4. To prevail on a 29 U.S.C. § 1132(c)(1) claim, "a claimant need not demonstrate bad faith by the plan administrator, for the statute penalizes [both] a *failure* to comply with a request as well as a *refusal* to comply with a request." *Emilien*, 70 Fed.Appx. at 645 (emphasis in original); *id.* ("[A] showing of noncompliance is sufficient ….").  Indeed, discovery in this case will likely be limited to whether and/or when Defendants mailed the COBRA notice, and should not encompass Defendants' alleged failure to provide procedural safeguards or copies of documentation required by its policies and contracts. The pertinent facts for purposes of proving a COBRA claim are whether the notice was timely provided—not whether the failure to provide notice is consistent with the Defendants' prior allegedly bad-faith conduct related to Plaintiff's termination.

In this connection, I also reject Defendants' attempt to distinguish *Hermann*, *supra*, by arguing that language in that opinion suggests a different result might attend if the plaintiff pled that a COBRA claim "grew out of some malevolent scheme by the defendant to do in the plaintiff at every turn."  999 F.2d at 227.  I read *Hermann* as emphasizing that the touchstone of a claim preclusion analysis is whether "the two claims are based on (largely) different facts."  *Id.* Although Plaintiff alleges in his complaint that the COBRA error is consistent with Defendants' prior bad-faith conduct, his COBRA claim is still based on largely different facts than his previously asserted unfair representation claims.  The instant suit, as in *Hermann*, is essentially premised upon Defendants' post-discharge processing of his COBRA benefits.  *See Guiles v. Metropolitan Life Ins. Co.*, No. 00-5029, 2001 WL 1454041 (E.D.Pa. Nov. 13, 2001) ("[The] Title VII claim in *Hermann* arose from the employer's pre-discharge conduct, while the plaintiff's COBRA claim concerned the post-discharge processing of the plaintiff's request for continued benefits.").

Defendants further argue that the Court should preclude the instant suit because the purpose of the claim preclusion doctrine would be advanced by such a ruling.  According to Defendants, claim preclusion "embodies the notion that the adjudication of a legal controversy should occur in one litigation in only one court."  Def. Open. Br. at 12.  This general proposition is true.  The Third Circuit has repeatedly emphasized that claim preclusion encompasses not only those claims brought a plaintiff, but those claims that *could have been brought* "with respect to all or any part of the transaction ... out of which the action arose."  *Sheridan*, 609 F.3d at 261 (quoting Restatement (Second) of Judgments § 24(1)).  *See also Duhaney*, 621 F.3d at 347 ("The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought."); *Mullarkey*, 536 F.3d at 225.  Indeed, at first blush, it

might appear that Plaintiff kept "his COBRA claim in his back pocket, amassing damages until after JSUMC and Meridian successfully defended against *Simoni I*." Def. Open. Br. at 13-14.

Nevertheless, Defendants' argument misses the mark by too broadly conceiving the transaction in the first suit.  As noted, a plaintiff is obligated to bring only those claims that relate to the "transaction . . . out of which the [first] action arose." *Sheridan*, 609 F.3d at 261.  In the case of *Simoni* I, the "transaction" was the Union's alleged failure to properly represent Plaintiff in connection with his termination.  That transaction did not also encompass the Hospital Defendants' obligation to offer post-termination COBRA benefits to Plaintiff.  While Plaintiff had the option of bringing his COBRA claim at the time his initial suit was filed since he had not received his initial COBRA notice by the date he filed his initial complaint nonetheless, under Third Circuit claim preclusion jurisprudence, he was not required to do so.[4]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss is DENIED.


                                                     /s/ Freda L. Wolfson
                                                    Freda L. Wolfson, U.S.D.J.


Dated:         July 5, 2012

---

[4]      In this connection, I further note that Plaintiff has indicated by way of supplemental letters to the Court that he may seek to file another amended complaint to add a corporation named Ceridian as a defendant in this suit.  An exhibit attached to Plaintiff's correspondence suggests that Ceridian may serve as a third-party that aids JSUMC in complying with its COBRA obligations.  The Court does not address in this Opinion whether leave to amend will be granted.